MARIE C. GARRABRANT, PLAINTIFF-RESPONDENT, v. PENSION COMMISSION OF THE EMPLOYEES' RETIRE- MENT SYSTEM OF COUNTY OF ESSEX, DEFENDANT- APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 17, 1952—Decided December 10, 1952.

Before Judges McGeehan, Bigelow, and Jayne.

*Mr. Marshall Crowley* argued the cause for appellant.

*Mr. Samuel Allcorn, Jr.*, argued the cause for respondent (*Messrs. Goodell and Allcorn*, attorneys).

The opinion of the court was delivered by

Jayne, J. A. D.   The plaintiff in this action in lieu of prerogative writ is the widow, remaining unmarried, of one Walter E. Garrabrant, who was in the employ of the County of Essex continuously from July 15, 1919 to June 15, 1951, a period in excess of 30 years. He died on October 2, 1951.

The factual background from which this litigation emerges may be revealed concisely. Pursuant to the legislative authority conferred by *chapter* 122 of the *Laws of* 1929, the County

Employees' Pension Fund was in that year created. Membership in the pension fund was not compulsory. Garrabrant in the exercise of the option made available to him by section 12 of the act notified the pension commission in writing that he did not desire to be bound by the provisions of the act and accordingly no deductions were made for pension contributions from his salary until by virtue of the enactment of *chapter* 169 of the *Laws of* 1937 he accepted the opportunity afforded him to become a member of the pension fund without the payment of arrearages, from which time, December 1, 1937, the regular deductions for pension allowances were currently made from his salary.

He continued to be a member of the County Employees' Pension Fund and of the Employees' Retirement System of the County of Essex with which the former was merged in 1943 (*L.* 1943, *c.* 160) until June 15, 1951, at which time he became totally and permanently disabled in consequence of injury and illness unrelated to his employment by the County of Essex.

He thereupon presented his application to the pension commission for retirement requesting the allowance of a pension equal in amount to 50% of his salary. He predeceased the determination of his request, and an application on behalf of the present plaintiff for the allowance to her as his surviving widow of a pension in like amount promptly ensued.

On November 5, 1951, although the pension commission determined that Garrabrant had been entitled to retirement on June 16, 1951,. the applications for pension allowances equal to 50% of the decedent's salary were denied, and it was resolved by the commission that a pension be granted to him from June 16, 1951 to October 2, 1951, and thereafter to his widow, in an amount equal to $32\frac{1}{2}\%$ of the decedent's salary calculated only upon the period during which Garrabrant was a member of and contributed to the aforementioned pension systems rather than upon the maximum period of his employment by the county.

The plaintiff, conceiving the computation of the pension in point of basic time of service and percentage of salary to be invalid, prosecuted this action to obtain a judgment: (a) nullifying the resolution adopted on November 5, 1951, (b) directing the defendant to adopt a resolution approving and authorizing the payment of the pension requested, and (c) for the recovery of the unpaid instalments thereof. The plaintiff was awarded such a judgment, and the defendant appeals therefrom.

A consideration of the legal propriety of the judgment necessitates a familiarity with section 2 of the supplementary enactment of 1937 (*L.* 1937, *c.* 169, *R. S.* 43:10–17):

"Any such county employee who, prior to June third, one thousand nine hundred and thirty-seven, declined to be bound by the provisions of this article, may, notwithstanding such declination, within six months after said date, become a member of said fund upon payment into the fund, in such manner as shall be determined by the pension commission, all arrears, with interest, as the pension commission shall determine to be due in order to give such employee the same standing as a member of said fund as all other members who joined said pension fund when the law providing for such fund became effective. The maximum rate of interest shall not exceed the average rate of earnings of the investments of said fund. The maximum length of time for the payment of arrears shall be five years from the date of the application to join the fund.

Any such county employee who, prior to June third, one thousand nine hundred and thirty-seven, declined to be bound by the provisions of this article, may, notwithstanding such declination, become a member of said fund upon written application, and the regular deductions from the salary of such employee shall commence upon the filing of such written application; provided, however, that neither such employee, nor his dependents, shall be entitled to any of the benefits of this article for a period of five years from the date of his acceptance into the fund as aforesaid."

Garrabrant elected to obtain membership in the fund by relinquishing all right to the receipt of any benefits for a period of five years from the date of his acceptance. The controversial issue is whether, in the calculation of the amount of the pension, recognition shall be attributed to the total number of years of the decedent's service or merely to

the number of years during which he was a member of and contributed to the successive pension funds.

The application of the plaintiff, as in the case of her spouse, now deceased, was made pursuant to the provisions of *R. S.* 43:10–18.10. This provides that an employee who

"shall become permanently and totally disabled as the result of injury or illness not arising out of and in the course of his employment shall, upon his application, be retired on pension equal to two and one-half per centum (2½%) of his salary, and for each additional year of service more than one year the amount of said pension shall be increased to the extent of two and one-half per centum (2½%) of said salary, not exceeding in any event fifty per centum (50%) of said salary. Upon and after the death of such employee while on such pension the said pension shall be paid to the surviving widow, so long as she remains unmarried * * *."

The defendant seems to acknowledge that all county employees who joined the pension fund upon its establishment in 1929 and also all those who thereafter joined the fund pursuant to the privilege accorded by the supplement of 1937 and chose to pay into the fund all arrears of pension deductions, would have been entitled to credit under the 1929 pension fund for all service rendered to the county prior to 1929 without having made any payment for such antecedent period of service. But the defendant holds the conviction that those who chose to pursue the latter alternative under the supplement of 1937 and waive the right to all pension benefits for a period of five years instead of paying arrearages, are not entitled to any credit for that period of service which has preceded their admission to membership in the fund.

Suppose by marshalling the clauses of the two paragraphs of the statute we compare them. "Any such county employee who * * * declined to be bound by the provisions of this article, may, notwithstanding such declination, * * * *become a member of said fund* upon payment into the fund * * *." In contrast, "Any such county employee who * * * declined to be bound by the provisions of this

article, may, notwithstanding such declination, *become a member of said fund* \* \* \* provided \* \* \*." It is noticeable that in either instance the employee becomes "a member of said fund."

After the proviso which withholds the payment of benefits to such a member for the period of five years has vanished, the employee for aught that appears in the statute becomes entitled to those benefits which accrue to any other who is characterized in the statute as "a member of said fund." A legislative intention otherwise to classify or grade the members of the fund is not discernible.

Some perceptible foundation must be discovered in the statute in order to resolve that the designation "member of said fund" as employed in the 1937 act contemplated two classes of members, namely, those who paid arrearages and thereby achieved immediate equal standing entitling them to credit for prior service and those who joined without payment of arrearages and with a postponement of the right to benefits and who would never be entitled to equal standing with regard to credit for prior service. We are not at liberty to improvise such an implication. The statute speaks of only one destination, *viz.* "member of said fund," and indicates two avenues by which it can be reached. Deduction is analytic; induction, synthetic. It is futile to attempt to divide the indivisible.

We quote with approval the following from the memorandum opinion of Judge Hughes:

"The defendant has urged that the construction of the statute proposed by plaintiff would or might establish inequity as between members of the pension system. This may quite well be so, and depending upon the time of the occurrence of death or disability justifying application for pension, would undoubtedly have that result. But it must be noticed that this inequity is a gradual diminishing one, and that the years will bring about its extinction, all the earlier in view of the limitation of 50% of the annual salary. That inequities may exist for a time leading to an eventual parity among the membership does not seem to me to color or void the otherwise obvious legislative intent to protect employees and encourage their membership in pension systems."

■ The judicial function is to ascertain the legislative intent, not to determine the reasonableness, expediency or pragmatism of a legislative policy legitimately ordained. Moreover in the present case we are not enlightened by any evidence concerning the fiscal and actuarial consequences of the admission of members to such pension funds upon the terms here prescribed. The Legislature upon consideration of substantive information before it may have justifiably determined that the relinquishment of the right to benefits for the succeeding five years, an optional alternative made available to those "whose marginal economic status did not permit of the additional income drain of arrearage payments in addition to current pension deductions" constituted pragmatically and promotionally a *quid pro quo* for parity membership.

■■ We do not detect anything in the 1943 legislation as amended which militates against that construction. Rather it is entirely consonant therewith. We quote:

"All such employees who become members of the county employees' retirement system provided by this act shall be given credit for pension purposes hereunder for all services, including services performed in any elective office, rendered to the county prior to July first, one thousand nine hundred and forty-three; * * *." *R. S.* 43:10–18.6(c).

The proviso in the paragraph of the statute relating to the transfer to the new system of "all the conditions and obligations of such prior agreement made by such employee" does not possess relevancy in this case, since the employee had not incurred upon his admission to membership the obligation to pay arrears, and the condition which required him to forbear the receipt of benefits for the initial period of five years had been fulfilled. The exception contained in the next succeeding paragraph is manifestly inapplicable.

Our study of the pertinent legislation leads us to concur in the conclusion that upon his retirement Garrabrant was a "member of the fund" and as such entitled to the full benefits of such membership.

The judgment is affirmed.